**UNITED STATES of America, Plaintiff,**

v.

**5.382 ACRES IN FRANKLIN COUNTY, VIRGINIA, etc., Defendant.**

**Civ. No. 94–185–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Dec. 19, 1994.

Joseph William Hooge Mott, U.S. Attorney's Office, Roanoke, VA, for plaintiff.

James Richard McGarry, Young, Haskins, Mann & Gregory, P.C. and George R. Gautsch, Martinsville, VA, for claimants.

## MEMORANDUM OPINION

WILSON, District Judge.

This is an *in rem* civil forfeiture action brought by the United States pursuant to the forfeiture provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1980, § 511(a), 84 Stat. 1276, as amended, 21 U.S.C. § 881(a). The United States maintains that a 5.382 acre tract of land in Franklin County, Virginia, is forfeitable under 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to the exchange of controlled substances and is forfeitable under 21 U.S.C. § 881(a)(7) because it was used to facilitate

drug trafficking crimes. The owner of record, Eustacia ("Stacy") Fisher, asserts that the property was purchased with legitimate funds and that any drug offenses committed on the property were without her knowledge or consent. Two other claimants, Garry L. Hazelwood and his wife, Darlene B. Hazelwood, assert mechanic's liens.

The case was tried by the court. The court found that the government had met its burden of demonstrating probable cause to believe that there is a substantial connection between the property to be forfeited and felony drug trafficking crimes. The parties then marshalled their evidence on the ultimate issues: (1) whether there, in fact, is a substantial connection between the property and the drug trafficking activities; (2) whether Mrs. Fisher had knowledge of or consented to the illegal drug activity; and (3) whether the Hazelwoods have protectable interests in the property. The court now concludes that there is a substantial connection between the property and the drug trafficking of Mrs. Fisher's husband, William ("Billy") L. Fisher, that Mrs. Fisher had knowledge of and tacitly consented to that activity, and that the Hazelwoods do not have a valid mechanic's lien. Accordingly, the property will be forfeited and the claims of Mrs. Fisher and the Hazelwoods rejected. This opinion will serve as the court's findings of fact and conclusions of law.

## I.

Stacy Fisher's husband pled guilty in this court in December 1992 to distributing amphetamines and possessing a firearm during and in relation to a drug trafficking crime. Evidence indicates that Mr. Fisher manufactured or assisted in the manufacturing of amphetamines beginning, at least, in 1990, and that he operated his own clandestine laboratory. He also trafficked in cocaine and other controlled substances.

In 1988 or 1989, Mr. Fisher met and began to date Stacy. They lived together and eventually married in July 1990. On occasion, the Fishers would have parties at their residence where cocaine was openly supplied. Despite modest legitimate employment, Mr. Fisher was able to amass substantial assets and live a life style that aroused even his father's suspicion. In early 1990, several months before their wedding, the Fishers purchased the 5.382 acres that is the subject of this forfeiture proceeding. The deed of conveyance purports to convey the property to the Fishers as husband and wife, although they were not yet married.

Later in 1990, the Fishers began constructing a house on the property. Mrs. Fisher purchased most of the materials, and the labor was primarily performed by Mr. Fisher, his family, and by his drug trafficking associates. Mr. Fisher stored chemicals on the property, dried amphetamines there, and frequently negotiated drug deals there.

There was a shed on the property not far from the house. Mr. Fisher used the shed primarily for his drug business. Despite her interest in the property, Mrs. Fisher never went into the shed, according to her testimony, because Mr. Fisher would not allow her. She also testified that Mr. Fisher frequently made her leave the room when transacting business in their home. Mrs. Fisher testified that she did not know that her husband was a drug dealer until after his operation was discovered by the government and Mr. Fisher told her about it.

The government agents uncovered Fisher's operation in February of 1992 and confronted him. He quickly agreed to cooperate and signed a plea agreement. He, nonetheless, explored ways to set up a clandestine lab in Canada and likely remained involved in drug trafficking.

Shortly before Mr. Fisher pled guilty in December of 1992 to drug trafficking, he and Mrs. Fisher signed a deed purporting to convey the Franklin County tract to another person, Eustacia L. Horsley, who was identified in the deed as an unmarried grantee. In fact, the grantee was Mrs. Fisher, identified by her maiden name and as unmarried in a transparent effort to conceal her identity and avoid forfeiture.

Later, Mrs. Fisher attempted to sell the property and, in March of 1993, entered into a contract with the Hazelwoods to convey the property to them for $77,000. The Hazelwoods conditioned the contract on their abili-

ty to obtain suitable financing from the bank. For the Hazelwoods to obtain financing, however, certain improvements were required which Mrs. Fisher permitted the Hazelwoods to make. The bank also required Mr. Fisher to join in the conveyance. Because Mr. Fisher had previously transferred his interest to his wife and was not a party to the contract of sale, he refused. Following Mr. Fisher's refusal, the Hazelwoods abandoned the contract and filed a mechanic's lien, seeking to recover for their labor and materials in improving the property.

## II.

The government brought this civil forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(6) & (7), which provides the following:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6) & (7) (Law. Co-op. Supp.1994).

■ In forfeiture proceedings under this section, the government has the initial burden of showing "probable cause for the belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by statute." *United States v. Thomas,* 913 F.2d 1111, 1114 (4th Cir.1990) (citing *Boas v. Smith,* 786 F.2d 605, 609 (4th Cir.1986)). "Probable cause" in forfeiture proceedings is the same as the standard used in the search and seizure context:

> It requires the court to "make a practical, commonsense decision whether, given all the circumstances set forth … including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability" that the properties to be forfeited need not be shown in order to establish probable cause.

*Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)) (quotation marks omitted). A "substantial connection" between illegal activity and the property requires that "human agency somehow … bear[s] responsibility for the property's "use" for or "facilitation" of crime." *United States v. Two Tracts of Real Property,* 998 F.2d 204, 212 (4th Cir.1993). Once the government has shown probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence that the property was not unlawfully used or that she did not know about or consent to the illegal use of the property. *United States v. 7715 Betsy Bruce Lane,* 906 F.2d 110, 111 (4th Cir.1990).

■ At trial, this court found that the government established probable cause to believe that there is a substantial connection between Mr. Fisher's drug trafficking activities and the real property. The court now finds that such a connection, in fact, exists. The property served as the nerve center, if not the actual center, for the manufacture of amphetamines. Mr. Fisher stored chemicals on the property, dried amphetamines there, and frequently negotiated drug deals there. None of the claimants have produced evidence disputing the connection between the illegal activities and the property. Accordingly, the court finds that the government has established the substantial connection

necessary to subject the property to forfeiture.[1]

### III.

■ The burden shifted to Mrs. Fisher to prove the "innocent owner" defense, that she did not know about or consent to the illegal use of the property, by a preponderance of the evidence. *7715 Betsy Bruce Lane,* 906 F.2d at 111. A claimant can defeat forfeiture because she lacked knowledge or consent in either of two ways:

> [I]f an owner can prove lack of knowledge of drug-related occurrences on the property, forfeiture is instantly defeated. Moreover, even if such knowledge is established, an owner may demonstrate lack of consent to the illegal activities as a defense to the seizure.

*United States v. 418 57th Street,* 922 F.2d 129, 131 (2d Cir.1990). In order to show lack of consent, however, "claimants must demonstrate that they "did all that reasonably could be expected to prevent the illegal activity once [they] learned of" the illicit use of the property." *United States v. 755 Forest Road,* 985 F.2d 70, 72 (2d Cir.1993) (quoting *United States v. 141st Street Corp., by Hersh,* 911 F.2d 870, 879 (2d Cir.1990)). Property owners are required to meet a significant burden in proving lack of consent for they must remain accountable for the use of their property:

> Unless an owner with knowledge can prove every action, reasonable under the circumstances, was taken to curtail drug-related activity, consent is inferred and the property is subject to forfeiture.

*418 57th Street,* 922 F.2d at 132. If a claimant is unable to produce sufficient evidence, summary judgment is properly granted to the government based upon its showing of probable cause. *7715 Betsy Bruce Lane,* 906 F.2d at 111.

■ After reviewing the evidence, the court finds that Mrs. Fisher failed to show, by a preponderance of the evidence, that she was an "innocent owner" of the Franklin County property. In the face of Mr. Fisher's unexplained income, his private negotiations on the premises, his abundant supply of drugs for his and Mrs. Fisher's personal use, and his alleged restriction on Mrs. Fisher's entry into their shed, Mrs. Fisher's bald assertion that she did not know that her husband was a drug dealer or that he was using the residence in furtherance of that business lacks plausibility and is not credible. Moreover, for the same reasons, it is apparent that Mrs. Fisher has failed to demonstrate that she did not consent to those activities. Accordingly, the court finds that the Franklin County property is subject to forfeiture.[2]

### IV.

The court next turns to the validity of the mechanic's lien asserted by Garry and Darlene Hazelwood. The Hazelwoods assert that since they made improvements on the Franklin County property for which they were not reimbursed, they are now entitled to a lien on the property. Mrs. Fisher and the government contend that the Hazelwoods have no mechanic's lien here because they did not contract with Mrs. Fisher for the improvements. The court agrees.

■ A mechanic's lien attaches to property by operation of law when a contract has been entered into and work is done which adds to the value of the property. 12B M.J. *Mechanic's Liens* § 2 (1992). Although me-

---

**1.** The forfeiture also passes muster under the Eighth Amendment. In order to sustain an Eighth Amendment challenge to a civil forfeiture, "the court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense...." *United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994). That test is not necessarily more stringent than the "substantial connection" requirement: "If the statutory prerequisites for forfeiture are carefully observed, a judgment of forfeiture generally will satisfy the instrumentality test adopted by the court today." *Id.* at 358 (Wilkinson, J., concur-

ring). This court finds that the Franklin County property served as an important instrument in Fisher's drug trafficking crimes by providing a location for storage of chemicals and drug negotiations, among other drug-related activities. As such, there is no Eighth Amendment problem here.

**2.** Since the court finds that Mrs. Fisher's interest in the Franklin County property is subject to forfeiture, the issue of whether Mrs. Fisher held the property in a tenancy by the entirety or by a tenancy in common is moot.

chanic's liens are unknown at common law, Virginia has statutorily provided for them:

All persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold ... shall have a lien.... But when the claim is for repairs or improvements to existing structures only, no lien shall attach to the property repaired or improved unless such repairs or improvements were ordered or authorized by the owner, or his agent.

Va.Code Ann. § 43–3 (Michie 1994). Furthermore, a mechanic's lien must be based on a contract, with which it must conform: "[A]lthough the lien is a creature of the statute, it must have its foundation in a contract. Hence it must correspond with the contract, as has been decided by other courts in analogous cases upon statutes similar to ours." *Sergeant v. Denby,* 87 Va. 206, 12 S.E. 402 (1890); *Rosser v. Cole,* 237 Va. 572, 379 S.E.2d 323, 325 (1989). Although the contract may be either oral or written, it is imperative that a contract exists.

█ Here, the Hazelwoods improved the Franklin County property after learning that their bank would not approve financing for the purchase of the property absent the improvements. No agreement to pay for the improvements was ever negotiated between the Hazelwoods and Mrs. Fisher, however. Although Mrs. Fisher knew that the Hazelwoods were working on her home, she did not agree to reimburse them for their labor or materials. Essentially, the Hazelwoods improved the property on the assumption that they would enjoy the benefit of the improvements after purchasing the property. At that time, they had no expectation of reimbursement from Mrs. Fisher. Only af-

ter the Hazelwoods failed to obtain financing did they abandon the contract to purchase Mrs. Fisher's property and seek reimbursement for their expenditures.[3] As stated above, a mechanic's lien must rest on a contract, either oral or written. The Hazelwoods had no contract with Mrs. Fisher to improve the property. As such, no mechanic's lien exists.[4]

### V.

For the reasons stated above, the court finds that the Franklin County property is subject to civil forfeiture and that the claimants have no sustainable interest in the property.

---

3. The contract for sale of the Franklin County property was not breached by either Mrs. Fisher or the Hazelwoods. Since the Hazelwoods had conditioned the sale on their being able to obtain suitable financing, they did not breach the contract by abandoning it when they failed to obtain satisfactory financing.

4. Although the issue was not asserted at trial, the court examined whether the Hazelwoods have an equitable lien on Mrs. Fisher's property. In Virginia, an equitable lien arises from a contract, either written or verbal, which shows an inten-

tion to secure a debt against certain property. *See Hoffman v. First Nat'l Bank of Boston,* 205 Va. 232, 135 S.E.2d 818, 822 (1964) (finding no equitable lien when a brokerage contract failed to sufficiently show an intention by the parties to secure payment with certain property). Here, the Hazelwoods entered into a contract of sale, but, as in *Hoffman,* there is no indication that the parties intended to secure the Hazelwoods' improvement expenses with the property. As such, the Hazelwoods are not entitled to an equitable lien.